Christopher Massenburg (State Bar No. 309621)
cmassenburg@mgmlaw.com
David M. Glaspy  (State Bar No. 95332)
dglasby@mgmlaw.com
**MANNING GROSS + MASSENBURG LLP**
444 South Flower Street
Suite 4100
Los Angeles, CA 90071
Tel.: (213) 622-7300
Fax: (213) 622-7313

Attorneys for Defendant
**GREENE, TWEED & CO., INC.**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL R. MARCUS, an individual and VICTORIA L. MARCUS, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION, successor-by-merger to BUFFALO PUMPS, INC., et al.<br><br>Defendants. | Case No. Click here to enter text.<br><br>**DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION** |

1

# **TABLE OF CONTENTS**

I.      BACKGROUND FACTS.................................................................................. 5

II.      UNITED STATES NAVY SPECIFICATIONS GOVERNING GASKETS AND

PACKING ....................................................................................................... 5

III.   GROUNDS FOR REMOVAL ...................................................................... 12

IV.   FEDERAL OFFICER REMOVAL (28 U.S.C. § 1442(a)(1)) ....................... 14

V.      JURISDICTION ......................................................................................... 18

VI.   INSTRADISTRICT ASSIGNMENT ......................................................... 19

VII.  PROCEDURAL COMPLIANCE.................................................................. 19

VIII.  RESERVATION OF RIGHTS/DENIAL OF LIABILITY ........................... 20

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

MANNING GROSS + MASSENBURG LLP

1

# TABLE OF AUTHORITIES

2

**CASES**

3

*Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998)........................19

4

*Boyle v. United Technologies, Inc*., 487 U.S. 500 (1988) .......................................17

5

*Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960) .........................................19

6

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016)............................15, 18

7

*Doe v. Kerwood*, 969 F.2d 165, 168 (5th Cir. 1992)................................................19

8

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) .........12, 13

9

*Ely Valley Mines, Inc. v. Hartford Accident and Indem. Co.*, 644 F.2d 1310, 1314-

10

15 (9th Cir. 1981) ...............................................................................................19

11

*Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992) ................................14

12

*Huntingdon Valley Club Condo. Ass'n v. Pa. Hous. Fin Agency*, 2005 U.S. Dist.

13

LEXIS 234,*6, 2005 WL 44524 (E.D. Pa. 2005) .................................................19

14

*Isaacson v. Dow Chem. Co.*, 517 F. 3d 129, 135-36 (2d Cir. 2008) .................14, 16

15

*Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999)..........................................16, 18

16

*Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010)..............................17

17

*Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 438 (5th Cir. 2000) ...............................15

18

*Leite v. Crane Co.*, 749 F. 3d 1117, 1120, 1122, 1124 (9th Cir. 2014) .......13, 15, 16

19

*Mesa v. California*, 489 U.S. 121, 123-135 (1989)..................................................14

20

*Miller*, 275 F.3d at 423; *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 438-39 (5th Cir.

21

2000)...................................................................................................................17

22

*Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996) ...................17

23

*Papp v. Fore-Kast Sales Co.*, 809, 812, 813, 824 F.3d 805, 812 (3rd Cir. 2016)...14,

24

16, 17,18, 19

25

*Ruppel v. CBS* Corp, 701 F.3d 1176, 1178, 1181-1186, 1188 (7th Cir. 2012) .14, 15,

26

16, 17, 18

27

*Sawyer*, 860 F.3d at 259 ...........................................................................................17

28

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

MANNING GROSS + MASSENBURG LLP

*Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995) .............................17

*Thermitron Prods., Inc. v. Hermansdorfer* (1976) 423 U.S. 336 ............................20

*Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007) ...............................16

*Willingham v. Morgan*, 395 U.S. 402, 405, 407 (1969) ....................................18, 20

*Winters v. Diamond Shamrock Chem. Co.*, 149 F. 3d 387, 396-398 (5th Cir. 1998)

.....................................................................................................................14, 17

*Yearsley v. W. A. Ross Constr. Co.*, 309 U.S. 18, 20-21 (1940) .......................17, 18

**RULES**

28 U.S.C. § 1332(a)(3) .............................................................................................18

28 U.S.C. § 1404(a) .................................................................................................18

28 U.S.C. § 1441(a) .................................................................................................18

28 U.S.C. § 1442(a)(1) ........................................................................13, 16, 17, 19

28 U.S.C. § 1446 ...............................................................................................13, 18, 19

28 U.S.C. § 1446(a) .................................................................................................18

28 U.S.C. § 1446(b) .................................................................................................11

28 U.S.C. § 1446(d) .................................................................................................19

28 U.S.C. § 1447(c) .................................................................................................19

28 U.S.C. § 1446(b) .................................................................................................11

MANNING GROSS + MASSENBURG LLP

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

MANNING GROSS + MASSENBURG LLP

## NOTICE OF REMOVAL OF ACTION

Pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, Defendant Greene, Tweed & Co., Inc. ("Greene Tweed") hereby removes this action from the Superior Court for the County of Alameda, California (the "Superior Court"), to the United States District Court for the Northern District of California. Greene Tweed provides the following short and plain statement of the grounds for removal:

### I.   BACKGROUND FACTS

1.      Greene Tweed was served with a summons and complaint on November 23, 2022, in connection with the civil action pending before the Superior Court, Case Number 22-CV-021840. (Summons and Complaint attached collectively as **Exhibit A**.)

2.      Plaintiffs, Michael R. Marcus and Victoria L. Marcus ("Plaintiffs"), allege that Michael M. Marcus' ("Mr. Marcus") mesothelioma was caused by his work with and around a wide variety of asbestos-containing products, including Greene Tweed products, while serving as a boiler tender in the United States Navy ("U.S. Navy" or "Navy") from June 1, 1966 through December 31, 1986. (Ex. A (Compl. Exhibit A)).

3.      As to Greene Tweed, Plaintiffs' causes of action sound primarily in negligence, strict liability, negligent misrepresentation, fraud by nondisclosure, and loss of consortium. (*See*, *e.g.*, Ex. A (Compl.) ¶¶ 20-41, 42-56, 57-65, 66-75, 126-130)

### II.   UNITED STATES NAVY SPECIFICATIONS GOVERNING GASKETS AND PACKING

4.      The military setting on Navy Ships is unique and distinct from the civilian environment. The military command hierarchy of rank is well defined and the accountability and authority of the Navy ship's Commanding Officer approaches absolute. This authority is based in Federal statute, as well as in Navy Regulations

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

and Instruction. Prior to the 1940s through the 1970s, the design of Navy warships started with the establishment of naval war fighting requirements at the national level. Examples included requirements such as the need to ensure that sea lanes in international waters cannot be denied by an enemy, the need to detect and neutralize hostile ships, submarines, and aircraft that might threaten U.S. or allied coasts, the need to transport and operate aircraft near enemy territory, and the need to transport and debark Marines anywhere in the world. From requirements such as these, various ship concepts were formulated. (Ex. D ¶¶ 7, 17).

5.     The detailed design of all equipment, subsystems, systems, and the entire ship had to fully comply with a variety of Navy design guidance developed from previous experience.  For example, the Navy set and followed internal standards and requirements regarding such matters as levels of redundancy necessary to preclude single points of failure, standardization of consumables and spare parts amongst different equipment and systems. Further the Navy set and followed standards across warship classes, crew operating environmental requirements such as temperature, noise, lighting, equipment labeling, standard Navy identification and labeling of decks, doorways, compartments, and equipment. The development of the contract design package involved multiple government decisions. Examples include decisions, which were subject to various Navy and other federal guidance and regulations, such as Federal Specifications, Federal Acquisition Regulations and Defense Federal Acquisition Regulations.  (Ex. D ¶¶ 25-26).

6.     The Navy developed Navy technical specifications (Navy Specs). Since the 1950s, Military Specifications (MILSPECs) have been used for the contract design package and acquisition process.  Thousands of MILSPECs were developed for various specific materials, equipment, components, books, manuals, label plates, and other materials. These MILSPECs presented very detailed descriptions of what the government required when procuring the items covered by the MILSPECs,

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

including requirements such as chemical composition, dimensions, required testing and performance demonstrations, required labeling, packaging and shipping requirements, and similar content.  These specifications typically cross-referenced and invoked other specifications. (Ex. D ¶27).

7.    Specifications for any equipment intended for use aboard Navy ships were drafted, approved and maintained by the Navy.  Once promulgated, only the Navy could make changes or modifications to those specifications. MILSPECs were prepared by hundreds of Navy engineers highly qualified in specialty areas such as, among many other things, valves, pumps, steam turbines, gas turbines, reduction gears, ship propulsion, auxiliary equipment, sealing materials such as gaskets and packing and thermal insulation. Three example of technical acquisition specifications for asbestos containing gasket material, MIL-A-17472A (SHIPS) of 4 January 1963, MIL-A-17472B of 22 May 1964 and Federal Specification HH-P-46E of 8 march 1975 are attached hereto as Exhibits A1, A2 and A3 to provide the Court with an example of the specificity required by MILSPECs. Similar detailed specifications existed for other types of gasket and packing materials. (Ex. D ¶28; *See also* Exhibits A1, A2, A3 of Exhibit D).

8.    This specification system was initiated in the 1930s and was expanded in both scope and detail for use in the procurement of the large number of complex warships procured in the World War II timeframe and since that time. The technical specifications system always included a disciplined revision and change process to ensure technical specifications were kept current and reflected changing requirements, technology, materials, and other related updates. Manufacturers of components, such as valves and pumps, procured by the Navy for use in warships were required to comply with technical specifications in all details in order for the Navy to accept the equipment being manufactured, tested, and shipped. (Ex. D ¶ 29).

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

MANNING GROSS + MASSENBURG LLP

9.     Navy specifications were communicated to vendors when the Navy (or private entities, such as shipyards or design professional firms) issued Requests for Proposal (formerly called Invitations for Bid) for the manufacture or supply of equipment and materials such as sheet gasket material for warship construction. Compliance with the standards and specifications issued for equipment and materials supplied for ultimate use aboard Navy ships was directly monitored by Naval Machinery Inspectors under both of the following divisions: (a) Machinery Inspectors under the Bureau of Supplies and Accounts worked on-site at vendors' facilities; and (b) Machinery Inspectors under BUSHIPS carried out their responsibilities at the shipbuilding yards. The Machinery Inspectors ultimately worked for the Secretary of the Navy or the Secretary of War.  These Inspectors exercised primary, front line control and direction over the work performed for the Navy by original equipment and material manufacturers, regardless of whether the equipment and material was being constructed or supplied pursuant to a Navy or private contract.  The Navy required in process testing and approval. For example, shock testing, balance testing, vibration testing, tolerance measurements, endurance testing, radiographic testing, and other testing were reviewed at the manufacturer's facility and approved by the Machinery Inspectors before the equipment or material was shipped.  Compliance with the testing requirements necessitated unique design and engineering to ensure the necessary strength and durability of the equipment and material for battle conditions.  Equipment or material could not have been installed aboard Navy vessels unless it was first determined by the Navy to be in conformity with all applicable Navy specifications. The Navy required equipment manufacturers to supply drawings and plans, which the Navy would approve and sometimes revise or comment on before equipment was constructed and shipped. (Ex. D ¶30).

10.     The incredible level of detail contained in these specifications is necessary to ensure complete and common understanding between the government

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

and vendors of what it is the government is requiring and is committing to pay for, to ensure commonality across systems with similar components, and ensure that replacement parts, equipment and consumable materials, some provided by different manufacturers, will all perform as desired.  An acquisition contract typically invokes many different MILSPECs, various technical documents such as drawings prepared by the Navy's Bureau of Ships. Taken together, the contract and the incorporated materials present all details of what the Navy requires. It is through this detailed acquisition process that misunderstanding, or rejection at the time of government acceptance inspection, is avoided.  This process also minimizes contract disputes between the government and industry vendors. Because of the complexity and thoroughness required, development of the contract design package for a warship such as a destroyer typically took two years or more to complete, with thousands of man-years or effort from engineers, logisticians, contract and legal specialists.  (Ex. D ¶¶ 31-32).

11.    Technical specifications referenced in the procurement documents for components such as valves and pumps have, since at least the 1940s, included detailed requirements regarding all written materials supplied with valves and pumps. Manufacturers were required to supply drawings and plans, and at times draft technical manuals for equipment.   The applicable specifications included strict instructions regarding the labeling of and packaging of the components themselves, and for all technical documentation that was procured with them. (Ex. D ¶58).

12.    To achieve its objective of ensuring that, in form and content, the marking on equipment filled the specific informational role, for the specific Navy audience and environment, the Navy developed precise specifications as to the nature of any markings, communication or directions affixed to or made a part of any equipment supplied by OEMs for ultimate use aboard Navy ships.  OEMs would not have been permitted, under the specifications, associated regulations and procedures,

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

nor under the actual practice as it evolved in the field, to vary or to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship, beyond those specifically required by the Navy without prior discussion and express approval by the Navy. (Ex. D ¶ 59).

13.     The Navy likewise had precise specifications as to the nature of written materials to be delivered with equipment supplied by OEMs to the Navy. This written material included a variety of formats such as design drawings, system schematics as well as operator reference materials to assist the equipment operators in operating, servicing and maintaining such equipment and to assist the Navy training establishment to develop instructional materials and courses. Through specifications, the Navy required that certain equipment be supplied with a defined number of copies of one or more instruction books or technical manuals. The Navy typically developed these technical manuals by including development of a draft manual as part of equipment procurement contracts. The draft manuals were required to be submitted to the Navy for detailed review and feedback. Once the draft manuals were found to be acceptable to the Navy, a BUSHIPS number was assigned and the manual became an official BUSHIPS document the contents of which were controlled by the Navy. The term "manufacturer's instruction books" that is found in many Navy rate training manuals refers to these Navy developed and approved technical manuals. (Ex. D ¶ 60).

14.     Navy personnel or those of the Navy's Design Agents participated intimately in the preparation and review of these instruction books and technical manuals in a standardized format used by the Navy.  These manuals included safety information to the extent – and only to the extent – directed by the Navy. Manufacturers of components and equipment were not permitted, under the specifications, associated regulations and procedures, nor under the actual practice

MANNING GROSS + MASSENBURG LLP

Manning Gross + Massenburg LLP

as it evolved in the field, to include any type of warning or caution statement in instruction books or technical manuals, beyond those required and approved by the Navy without prior discussion and approval by the Navy.  The Navy dictated and, itself or through its Design Agents, reviewed and approved the contents of all technical manuals, including any cautionary language or emphasis.  The Navy approached this process for review and approval of technical manuals in an exacting manner. It often created lengthy memoranda detailing word-by-word line edits to the content of technical manuals submitted for approval, including the wording of instructional material and warnings.  Examples of such correspondence are attached hereto as Exhibit K to Exhibit D.   Review of and comment upon instructional materials by the Navy's Design Agents were similarly detailed. (Ex. D ¶ 61; *see also* Exhibit K of Ex. D).

15.    Consistent with its objective to ensure that all documentation to which its personnel were exposed be thoroughly consistent with its overall training and procedures, the Navy would not have permitted equipment suppliers to place asbestos-related warnings on packaging or containers for valves and pumps or related parts or items supplied during from at least the 1940s through the late 1970s when the Navy developed its own asbestos material warnings. Similarly, the Navy would not have permitted equipment suppliers to place asbestos-related warnings in any literature or documentations supplied with valves or pumps for Navy ships during the 1940s through the 1970s. For similar reasons the Navy would not have allowed manufacturers of materials such as gasket and packing to place asbestos-related warnings on the face of the materials in the 1940s, 1950s, 1960s and 1970s. In fact the Navy did not specify asbestos-related warnings for gasket materials until late in the 1970s or early 1980s and when they did require warnings they were for the packaging and the exact words were specified. (Ex. D ¶ 64).

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

16.     The Navy maintained precise Navy Specifications and later Military Specifications that detailed all aspects of label plates that were required to be installed on equipment.  The Navy and military specifications for identification plates included materials to be used, method of attachment, size of plate, information and format of information required, and many other details to ensure standardization of such plates. The content and format of information that was to appear on those plates was required to be submitted to the Navy for approval.  MIL-I-15024 and MIL-I-15024B are examples of such precise military specifications for identification plates.  (Ex. D ¶ 69; *see also* Exhibits L and M of Ex. D).

17.     Thus, the Navy procurement processes, whether for equipment, consumable materials, such as gaskets and packing or related technical documentation was incredibly detailed and used multiple technical specifications to describe exactly what was required from a supplier such as Greene Tweed. (Ex. D ¶ 90).

### III.     <u>GROUNDS FOR REMOVAL</u>

18.     This Notice of Removal has been timely filed, in accordance with U.S.C. §1446(b), within thirty days of the date that Greene Tweed was served with Plaintiffs' Complaint.

19.     This action is being removed on federal officer grounds pursuant to 28 U.S.C. § 1442(a). The basis for removal is that this action involves a person (Greene Tweed) who, in relation to the claims being stated against it, acted under the authority, direction, and control of an officer or agency of the United States and who can state a colorable federal-law based "government contractor" defense to those claims.

20.     A case is removable under 28 U.S.C. § 1442(a) "when the plaintiff discloses sufficient facts for federal officer removal…" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006). Plaintiffs' Complaint makes it clear that

MANNING GROSS + MASSENBURG LLP

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

Decedent's alleged asbestos exposure resulted from his alleged contact with Greene Tweed's products that were manufactured and/or supplied to the United States military while serving in or working for the United States Navy. (Ex. A (Compl.). At Ex. A). See *Durham*, 445 F.3d at 1253. The facts in *Durham* are closely analogous to those in the case at bar. The plaintiff's complaint in *Durham* named Lockheed as a defendant and alleged asbestos exposure at Air Force facilities at which the plaintiff worked, but did not specify which Lockheed products allegedly exposed him to asbestos. *Id*. at 1249. Lockheed removed the case to federal court within 30 days after receiving discovery responses disclosing that the plaintiff was exposed to asbestos while working on its military aircraft. *Id*. at 1249. The plaintiff filed a motion to remand, which was granted by the district court. *Id*. at 1249-1250. The plaintiff did not dispute, and the district court did not deny, that the case was removable under 28 U.S.C. § 1442(a). However, the district court found that the case was not timely removed, and remanded the case back to state court. *See Id*. at 1249-1250. The Ninth Circuit reversed the district court's ruling, holding that Lockheed properly and timely removed based on federal officer jurisdiction. *Id*. at 1254. The Ninth Circuit, recognizing "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret 1442 broadly in favor of removal," explained that a case is properly removable under federal officer jurisdiction once "the plaintiff discloses sufficient facts for federal officer removal…." *Durham*, 445 F.3d at 1253; *see also Leite v. Crane Co.*, 749 F. 3d 1117, 1122 (9th Cir. 2014) (explaining that a case is properly removable if facts exist supporting removal jurisdiction).

21.     Accordingly, as in *Durham*, Plaintiffs' Complaint clearly alleges that Mr. Marcus's alleged exposure to asbestos resulted from his contact with asbestos-containing products manufactured, distributed, or installed by Greene Tweed while

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

MANNING GROSS + MASSENBURG LLP

working on or around military ships in the United States Navy, and therefore this matter is ripe for removal pursuant to 28 U.S.C. § 1442(a).

22.     Greene Tweed offers at this time the following statement and citations to authority in satisfaction of its obligations under 28 U.S.C. § 1446 to provide a short and plain statement of the legal and factual basis for its removal. However, if Plaintiffs pursue a motion to remand, Greene Tweed requests an opportunity to respond more fully with additional factual and legal support for this Notice of Removal.

### IV.     FEDERAL OFFICER REMOVAL (28 U.S.C. § 1442(A)(1))

23.     Removal is proper under 28 U.S.C. § 1442(a)(1) when facts are disclosed establishing that: (1) the removing defendant is a person within the meaning of the statute; (2) it performed the complained of action at the direction of a federal officer and under color of federal office; (3) there is a causal nexus between the defendant's actions and the plaintiff's claims; and (4) the defendant asserts a "colorable federal defense." *Mesa v. California*, 489 U.S. 121, 123-135 (1989); *Papp v. Fore-Kast Sales Co.*, 824 F.3d 805, 812 (3rd Cir. 2016); 28 U.S.C. § 1442(a)(1). Greene Tweed meets all four elements and is therefore entitled to remove this action pursuant to the federal officer removal statute.

24.     First, as a corporation, Greene Tweed is a "person" for purposes of 28 U.S.C. § 1442(a)(1).  *Papp,* 824 F.3d at 812; *Ruppel v. CBS Corp.*, 701 F. 3d 1176, 1181 (7th Cir. 2012); *Isaacson v. Dow Chem. Co.*, 517 F. 3d 129, 135-36 (2d Cir. 2008); *Winters v. Diamond Shamrock Chem. Co.*, 149 F. 3d 387, 398 (5th Cir. 1998), *cert. denied*, 526 U.S. 1034 (1999); *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992).

25.     Second, in designing, manufacturing, supplying gasket and packing materials for the United States military, Greene Tweed acted as a government

MANNING GROSS + MASSENBURG LLP

contractor under the detailed and ongoing direction and control of one or more federal officers.

26.     To the extent Greene Tweed supplied asbestos-containing gasket and packing material, it was at the direction of a federal officer, the United States Government, and under color of federal office.  The materials at issue were supplied pursuant to military procurement contracts with the United States Government and in compliance with detailed design, testing, and labeling specifications issued and approved by the Government. These specifications dictated the performance testing and material composition of the materials, including the requirement that such material contain asbestos fibers.

27.     These specifications dictated the writings and markings required and allowed to be placed on the materials. The design, manufacture, testing, labeling, and shipment of such materials were subject to close, detailed, and ongoing supervision and control of the United States Government and its officers. The Government exercised discretion and approval authority over the products supplied by Greene Tweed. Greene Tweed complied with all of the United States Government's specifications. And, to the extent of any alleged hazards associated with gasket and packing materials, there were no dangers known to Greene Tweed that were not known to the United States. *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 438 (5th Cir. 2000); *accord Leite v. Crane Co*., 749 F.3d 1117, 1120 (9th Cir. 2014); *Ruppel v. CBS* Corp, 701 F.3d 1176, 1186 (7th Cir. 2012); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016) (derivative sovereign immunity defense applies so long as the contractor can demonstrate that it complied with the Government's specifications regardless of the subject matter of the contract).

28.     Greene Tweed's alleged supply of gasket and packing materials under the control, direction, specification, and supervision of the Government thus satisfies the "acting under" requirement, which, like federal officer removal generally, "is

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

MANNING GROSS + MASSENBURG LLP

'broad' and is to be 'liberally construe[d]' in favor of the entity seeking removal.'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007).

29.     For purposes of federal officer removal, federal appellate case law is clear that military contractors were "acting under a federal officer" in relation to the design, manufacture, and supply of equipment to the United States Government.  *See, e.g., Papp*, 842 F.3d at 812 (*citing Ruppel,* 701 F.3d at 1184-1186). Indeed, Greene Tweed could not change the design or provide additional language—including warning labels—on the gaskets and packing without prior Government authorization. Moreover, not only did Greene Tweed's acquisition of Government approval for any design change require strict compliance with the Government's formal and detailed change process procedures, but the Government retained absolute authority at all times to accept, reject, or modify any aspect of a military government contractor's requested change proposal.  Similarly, Greene Tweed could not change the testing protocol that the gasket and packing material was subjected to because, pursuant to the clear language of the specifications, the testing was to be conducted in facilities approved by the Government and done in accordance with the Government's protocol.

30.     Third, there is a causal nexus between Greene Tweed's alleged actions in supplying the gaskets and packing and Plaintiffs' claim that Decedent's mesothelioma was caused by the asbestos-containing gaskets and packing Greene Tweed supplied to the U.S. Navy pursuant to and in strict adherence to applicable government specifications. In assessing whether a causal nexus exists, the Court credits the defendant's theory of the case. *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999); *Leite v. Crane Co.,* 749 F.3d 1117, 1124 (9th Cir. 2014); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2nd Cir. 2008).

31.     For this requirement, the federal officer removal has been broadened to include not only causally connected actions under color of federal officer, but also to

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

MANNING GROSS + MASSENBURG LLP

include *connected* or *associated* acts. *Papp*, 842 F.3d at 813. Here, a nexus exists because the very acts that form the basis of Plaintiffs' claims—Greene Tweed's supply of asbestos-containing products to the U.S. Navy for use on Navy ships and its alleged failure to warn about asbestos hazards—are acts that Greene Tweed performed in accordance and compliance with directions from the Navy. *Ruppel,* 701 F.3d at 1184-1186; *Winters v. Diamond Shamrock Chem. Co*., 149 F.3d 387, 396-397 (5th Cir. 1998) (government contractor who supplied dangerous herbicide Government used to conduct war could remove product liability actions pursuant to federal officer removal statute).

32.    Fourth, Greene Tweed asserts a colorable federal defense, namely the "government contractor" defense set forth in *Boyle v. United Technologies, Inc*., 487 U.S. 500 (1988) and its progeny. The government contractor defense applies to Plaintiffs' failure-to-warn claims, failure to test, and any design defect claims in that: (1) the Government approved specifications for the design and labeling of gaskets and packing; (2) Greene Tweed complied with these specifications, and (3) there were no health hazards associated with asbestos generally, or asbestos-containing gaskets and packing material specifically, of which Greene Tweed was aware and the Government was not. *See Boyle*, 487 U.S. at 512-513; *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010); *Miller*, 275 F.3d at 423; *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 438-39 (5th Cir. 2000); *accord Sawyer*, 860 F.3d at 259; *Ruppel,* 701 F.3d at 1188; *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995).

33.    Greene Tweed also is entitled to federal officer removal under 28 U.S.C. § 1442(a)(1) based on the separate defense of derivative sovereign immunity set forth in *Yearsley v. W. A. Ross Constr. Co*., 309 U.S. 18, 20-21 (1940), clarified most recently by *Campbell-Ewald Co.*, *supra*. In *Yearsley*, the Court established that a government contractor acting at the direction and authorization of a government

DEFENDANT GREENE, TWEED & CO., INC.'S NOTICE OF REMOVAL OF ACTION

MANNING GROSS + MASSENBURG LLP

officer is immune from suit based on performance of the government contract.  Thus, to establish that defense, Greene Tweed ultimately will have to prove that it supplied its asbestos-containing products to the Navy as authorized and directed by the Government.  *Campbell-Ewald Co*., 136 S. Ct. at 666; *Yearsley*, 309 U.S. at 20-21.  *Yearsley* is satisfied here because the acts complained of were performed at the direction of government officers acting under government authorization, and if the Government had performed those acts directly, it would be immune from suit.

34.    At this stage, to assert a colorable defense, a defendant is required only to identify facts which, viewed in the light most favorable to the defendant, would establish a defense under *Boyle*, *Ruppel*, or *Yearsley/Campbell-Ewald* at trial, and "need not win his case before he can have it removed."  *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).  "Just as requiring a clearly sustainable defense rather than a colorable defense would defeat the purpose of the removal statute, so would demanding an airtight case on the merits in order to show the required causal connection."  *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999).   To be "colorable," the defense need not be "clearly sustainable," as the purpose of the statute is to secure that the validity of the defense will be tried in federal court.  *Willingham*, 395 U.S. at 407.  Under identified facts similar to those here, federal courts consistently have denied motions to remand state law claims removed under the government contractor defense.  *See Papp*, 842 F.3d at 809; *Ruppel,* 701 F.3d at 1178.

## V.    <u>JURISDICTION</u>

35.    Removal of this action is proper under 28 U.S.C. § 1442.  Consistent with the short and plain statement of the law and facts set forth above, the federal district courts have original jurisdiction over the subject matter of this suit under 28 U.S.C. § 1442(a)(1) because Greene Tweed was acting under an officer or agency of the United States Government in relation to any claims asserted against Greene

MANNING GROSS + MASSENBURG LLP

Tweed and Greene Tweed can state at least a colorable defense under federal law to any such claims. *See Papp*, 842 F.3d at 809.

36.     Section 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency.

37.     The Superior Court is located within the judicial district overseen by the United States District Court for the Northern District of California, making venue proper. *See* 28 U.S.C. §§ 1332(a)(3) and 1441(a).

## VI.     INSTRADISTRICT ASSIGNMENT

38.     Because this Court is the United States District Court for the district and division embracing the state court action in which this case was filed, it is the appropriate Court for removal under 28 U.S.C. § 1446(a). However, Greene Tweed notes that if few, if any, of the events or omissions giving rise to the claim appear to have occurred in this district and, as such, pursuant to 28 U.S.C. § 1404(a), the Court may order the action transferred to another district *sua sponte*. Greene Tweed reserves the right to move the Court for transfer to another district.

## VII.     PROCEDURAL COMPLIANCE

39.     Greene Tweed is not required to obtain the consent of any other defendants to remove this action in its entirety under section 1442(a)(1). *Huntingdon Valley Club Condo. Ass'n v. Pa. Hous. Fin Agency*, 2005 U.S. Dist. LEXIS 234,*6, 2005 WL 44524 (E.D. Pa. 2005) (*citing Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998); *Doe v. Kerwood*, 969 F.2d 165, 168 (5th Cir. 1992); *Ely Valley Mines, Inc. v. Hartford Accident and Indem. Co.*, 644 F.2d 1310, 1314-15 (9th Cir. 1981); *Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960); *see also* 14C Wright, Miller & Cooper, Federal Practice and Procedure § 3727, at 166-68 (3d ed. 1998)).

40.     In addition to Plaintiffs' Complaint, attached as Exhibit A, Greene Tweed has attached those documents required by 28 U.S.C. § 1446(a) as **Exhibit B**.

MANNING GROSS + MASSENBURG LLP

41.    Pursuant to 28 U.S.C. § 1446(d), Greene Tweed is filing written notice of this Notice of Removal with the Alameda County Superior Court concurrently with the filing of this Notice of Removal and will serve the same on counsel of record. A copy of the Notice of Filing Notice of Removal (without exhibits) as is being filed is attached as **Exhibit C**.

42.    A court cannot remand a properly removed case for discretionary or policy reasons, such as allegedly related state court cases or a contention that judicial economy compels remand.   28 U.S.C. § 1447(c); *Thermitron Prods., Inc. v. Hermansdorfer* (1976) 423 U.S. 336.  The federal officer removal statute, 28 U.S.C. § 1442(a)(1), is not narrow nor limited, and it should not be frustrated by a narrow or grudging interpretation.  *Willingham v. Morgan*, 395 U.S. 402, 405 (1969).

43.    If Plaintiffs file a motion to remand this action, Greene Tweed respectfully requests an opportunity to respond more fully in writing, including submission of additional affidavits and authority.

## VIII.    RESERVATION OF RIGHTS/DENIAL OF LIABILITY

44.    Nothing in this Notice is intended or should be construed as any type of express or implied admission by Greene Tweed of any fact alleged by Plaintiffs, of the validity of the merits of any of Plaintiffs' claims and allegations, or of any liability for the same, each and all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of any of Greene Tweed's rights, claims, remedies, and defenses, either procedural or substantive, in connection with this action, all of which are hereby expressly reserved.

///

///

///

///

///

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

MANNING GROSS + MASSENBURG LLP

**WHEREFORE**, Defendant Greene Tweed requests that this Court assume jurisdiction over this matter on removal from the Alameda County Superior Court.

December 21, 2022

Respectfully submitted,

**MANNING GROSS + MASSENBURG LLP**

_____
Christopher O. Massenburg (Bar No. 309621)
One Canal Place
365 Canal Street, Suite 3000
New Orleans, LA 70130
Phone: (504) 535-2880
Fax:      (504) 535-2886

-    **and –**

_____
David M. Glaspy (Bar No. 95332)
One Walnut Creek Center
100 Pringle Avenue, Suite 750
Walnut Creek, CA 94596
Phone: (925) 947-1300
Fax:  (925) 947-1594

**ATTORNEYS FOR DEFENDANT
GREENE, TWEED & CO., INC.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing pleading was filed electronically with the Clerk of Court and served upon all counsel of record using the CM/ECF system on this 21ST day of December, 2022.

**MANNING GROSS + MASSENBURG LLP**

Christopher O. Massenburg (Bar No. 309621)
One Canal Place
365 Canal Street, Suite 3000
New Orleans, LA 70130
Phone: (504) 535-2880
Fax:          (504) 535-2886

-   **and –**

David M. Glaspy (Bar No. 95332)
One Walnut Creek Center
100 Pringle Avenue, Suite 750
Walnut Creek, CA 94596
Phone: (925) 947-1300
Fax:  (925) 947-1594

**ATTORNEYS FOR DEFENDANT
GREENE, TWEED & CO., INC.**

DEFENDANT GREENE, TWEED & CO., INC.'S  NOTICE OF REMOVAL OF ACTION

MANNING GROSS + MASSENBURG LLP