UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL R. MARCUS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, et al.,<br><br>Defendants. | Case No. 22-cv-09058-HSG<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND**<br><br>Re: Dkt. No. 87 |

Before the Court is Plaintiffs' motion to remand and for fees. Dkt. No. 87. Defendants oppose the motion. Dkt. Nos. 111, 112, 113, 114. For the following reasons, the Court **DENIES** the motion to remand.

I.  **BACKGROUND**

Plaintiffs Michael Marcus and Victoria Marcus (collectively, "Plaintiffs") bring this motion to remand the case to Alameda County Superior Court. Dkt. No. 87. Plaintiffs' seven-count complaint alleges that Mr. Marcus' terminal mesothelioma was caused, at least in part by his work with and around products containing asbestos during his service in the United States Navy.[1] Compl. ¶ 12. Plaintiffs claim that over 20 defendants violated various state tort laws and exposed Mr. Marcus to asbestos, a hazardous product, and that Mr. Marcus suffered significant permanent injuries as a result. Plaintiffs assert that Defendants are liable both for including asbestos in their products under a "design-defect" theory and for failing to provide warnings regarding asbestos

---

[1] Victoria Marcus, wife to Michael Marcus and co-plaintiff, claims that as a result of her husband's injuries, she has suffered loss of consortium and severe mental distress. Compl. ¶ 129.

under a "failure-to-warn" theory.

Defendant Greene, Tweed & Co., Inc. ("Greene Tweed") removed the case to federal court, arguing that removal was proper under the federal officer removal statute, 28 U.S.C. §§ 1442(a)(1).[2]  Dkt. No. 1.  Greene Tweed argues that to the extent it "supplied asbestos-containing gasket and packing material" to the government, it did so "pursuant to military procurement contracts with the United States Government and in compliance with detailed design, testing, and labeling specifications issued and approved by the Government." *Id*. at 9.   Plaintiffs now move to remand the case to state court on the ground that Defendants have not provided sufficient factual support to establish removal jurisdiction.[3]  In support of their factual attack, Plaintiffs submit extensive evidence outside the pleadings, including military specifications, technical manuals, and deposition excerpts.

## II.  LEGAL STANDARD

Defendants may remove a civil action filed in state court to federal court so long as the district court could have exercised original jurisdiction over the matter.  28 U.S.C. § 1441(a).  Removal under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), authorizes removal of a civil action brought against any person "acting under" an officer of the United States "for or relating to any act under color of such office."  To invoke the statute, defendants must show that (1) they are "persons" within the meaning of the statute, (2) "a causal nexus exists between plaintiffs' claims and the actions [defendants] took pursuant to a federal officer's direction," and (3) they have a "'colorable' federal defense to plaintiffs' claims." *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir.2006)).

Although generally the removal statute is strictly construed against removal and any

---

[2] Defendants Air & Liquid Systems Corporation and Foster Wheeler Energy Corporation joined Greene Tweed's notice of removal.  Dkt. Nos. 27, 105.

[3] Defendant J.R. Clarkson Co. LLC filed an opposition to Plaintiffs' motion to remand,  Dkt. No. 114.  Plaintiffs ask the Court to disregard that opposition because of J.R. Clarkson's failure to file either a notice or joinder of removal.  Dkt. No. 116 at 5.  From what the Court can tell, Plaintiffs are correct that J.R. Clarkson did not file a notice of removal or a joinder of removal.  As such, the Court does not rely on J.R. Clarkson's opposition to Plaintiffs' motion as a basis for its decision.

doubt as to the right of removal should be resolved in favor of remand, *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992), the opposite is true where defendants seek removal under the federal officer removal statute, *Leite*, 749 F.3d at 1122 ("We recognize that defendants enjoy much broader removal rights under the federal officer removal statute than they do under the general removal statute[.]"); *Durham*, 445 F.3d at 1253 (noting that removal rights under 28 U.S.C. § 1442(a)(1) are much broader than those under § 1441). The Ninth Circuit has recognized "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, [courts] are to interpret section 1442 broadly in favor of removal." *Wilgenbusch v. Fryer-Knowles, Inc.*, No. 19-cv-05620-JST, 2019 WL 13201904, at *1 (N.D. Cal. November 19, 2019) (quoting *Durham*, 445 F.3d at 1252).

Finally, because Plaintiffs have raised a factual attack on Defendants' jurisdictional allegations, Defendants must support their allegations with competent proof. *Leite*, 749 F.3d at 1122. Defendants bear the burden of proving by a preponderance of the evidence that the causal nexus and colorable federal defense requirements for removal jurisdiction have been met. *Id*.

## III. DISCUSSION

### A. Motion to Remand

The parties do not dispute that each removing Defendant qualifies as a "person" within the meaning of § 1442(a)(1). Dkt. No. 113 at 16. However, Plaintiffs argue that the other two elements of the federal officer removal statute are not met, namely that (1) Defendants did not act pursuant to a federal officer's direction;[4] and (2) Defendants do not have a "colorable" federal defense. The Court discusses each element in turn.

#### 1. Direction of a Federal Officer

To establish that they were acting under the direction of a federal officer, Defendants must show that a federal officer had "direct and detailed control" over them. *Wilgenbusch*, 2019 WL

---

[4] The second element of the relevant federal officer removal statute requires that Defendant demonstrate "a causal nexus exists between plaintiffs' claims and the actions [defendants] took pursuant to a federal officer's direction." Plaintiffs here do not contest the "causal nexus" portion of this element, and instead dispute only whether Defendants acted pursuant to a federal officer's direction.

3

13201904, at *3 (quoting *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992)). "Such control exists where, for example, the government consistently monitors a contractor's performance; requires it to comply with specifications; performs tests to ensure compliance; and subjects its supplies 'to inspection, test, and approval.'" *Id*. "In assessing whether a causal nexus exists" between plaintiffs' claims and the actions defendants took pursuant to a federal officer's direction, the Court must credit the defendant's theory of the case. *Leite*, 749 F.3d at 1124.

Plaintiffs claim that Defendants "offer no evidence demonstrating their contracts or transactions with the U.S. Navy to supply asbestos-containing products for use on any of the U.S. Navy ships at issue in this case such that there is any evidence that any act by Defendants was done pursuant to a federal officer's direction." Dkt. No. 87 at 12. Further, Plaintiffs claim that Defendants have not submitted any evidence that Defendants provided material subject to strict procurement contracts or military specifications. *Id*.

But removing Defendants proffer substantial testimony and supporting documents demonstrating the opposite. *See e.g.*, Dkt. No. 111, Kraft Decl. ¶¶ 18 ("Buffalo[5] was required to submit to the Navy, design agents hired by the Navy and/or the Navy's shipbuilder contractors, drafts of proposed technical drawings and manuals for prior review and approval. Pursuant to the applicable specifications and contract terms, all discretion to determine whether or not drawings, manuals or other items complied with applicable specifications and requirements was solely the Navy's. Buffalo could not finalize design drawings, manuals or other documentation, or proceed with the manufacturing of equipment until it first received written approval to do so from the Navy and/or its shipbuilders or design agents."); Dkt. No. 113, Sargent Decl. ¶¶ 26, 28 ("This detailed design of all equipment, subsystems, systems, and the entire ship had to fully comply with a plethora of Navy design guidance developed from previous experience . . . . The Navy maintained the responsibility to develop the MILSPECs and other standards for the manufacture and supply of equipment used in the construction, maintenance and repair of Navy ships. Specifications for any equipment intended for use aboard Navy ships were drafted, approved and

---

[5] Defendant Air & Liquid Systems Corp. is successor by merger to Buffalo Pumps, Inc. Dkt. No. 113.

maintained by the Navy. Once promulgated, only the Navy could make changes or modifications to those specifications. MILSPECs were prepared by hundreds of Navy engineers highly qualified in specialty areas such as, among many other things, valves, pumps, steam turbines, gas turbines, reduction gears, ship propulsion, auxiliary equipment, sealing materials such as gaskets and packing and thermal insulation.").

The record evidence also suggests that the Navy exercised considerable control over all contractors and subcontractors working on its ships in that it issued Military Specifications and Qualified Products Lists for all aspects of the ships and mandated a certain degree of compliance with these requirements. "Credit[ing] Defendants' theory," the Court finds that they have proved by a preponderance of the evidence that they acted at the direction of a federal officer. *Leite*, 749 F.3d at 1122.

Accordingly, Defendants satisfy the second element of § 1442(a)(1).

### 2. Colorable Federal Defense

Defendants contend that the "government contractor" defense set forth in *Boyle v. United Tech., Inc.*, 489 U.S. 500 (1988), applies to Plaintiffs' design-defect and failure-to-warn claims. Defendants' affidavits and supporting documents establish that they have presented a colorable federal defense.

#### a. Plaintiffs' Design Defect Claims

Under *Boyle*, a defendant is entitled to remove a design defect claim based on the government contractor defense upon a showing that: (1) the government approved reasonably precise specifications; (2) the product supplied conformed to those specifications; and (3) the supplier warned the government about dangers in the product's use that were known to the supplier but not to the government. *Boyle*, 487 U.S. at 512; *Ford v. Foster Wheeler USA Corp.*, No. 15-cv-05426-JSW, 2016 WL 551234, at *2 (N.D. Cal. February 12, 2016).

Defendants meet all three elements. With respect to the first element, the Court has already discussed Defendants' evidence detailing how the Navy issued detailed specifications governing the design, manufacturing, and installation of various materials and tools used by Defendants. In addition to this evidence, Greene Tweed submits deposition testimony from

Captain Burger of the U.S. Navy explaining that "most mil specs were [] detailed," such that "the specification for compressed asbestos sheet gasket material . . . required not only that asbestos be used but specified the giber type and the percentage of the product that was to be composed of asbestos." Dkt. No. 113, Dep. of Burger at 2. Defendant Air & Liquid Systems submits affidavits detailing that the Navy's specifications for pumps dictated material and design characteristics in detail. Dkt. No. 111, Kraft Decl. ¶¶ 13-15. And Defendant Foster Wheeler submits an affidavit of its former Proposal Engineer and President, Thomas Schroppe, explaining that "[i]n general, the Ship Spec was written and prepared by the naval architect and approved by the Navy and, in the course of its projects with the Navy, Foster Wheeler was required to design, fabricate and furnish equipment which complied strictly with the requirements in the Ship Spec." Dkt. No. 109, Schroppe Decl. ¶ 5.

As to the second element, Greene Tweed submits an affidavit from Plant Manager and Manufacturing Engineer Robert Rodgers explaining that once Greene Tweed's product conformed to the Navy specifications, the Navy conducted testing, and "[o]nly after the Greene Tweed product satisfied the testing requirements could it be qualified" for use by the Navy. Dkt. No. 113, Rodgers Decl. ¶¶ 8-13. And as to the third element, Defendants submit declarations from experts such as Dr. Forman, who ran occupational health clinics at naval stations, explaining that the Navy was aware of, studying, and discussing the potential health effects of working with and around asbestos since at least the early 1940s. Dkt. No. 112, Forman Decl. ¶ 20 ("The Navy's industrial hygiene and occupational health programs in these areas have paralleled, and at times led, the development of occupational medicine and industrial hygiene in general, and asbestos-related issues in particular. The Navy's knowledge in the areas of asbestos and associated health conditions has been quite complete when compared to available knowledge over time, and at least by the early 1940s, the Navy had become a leader in the field of occupational medicine relating to, among other things, asbestos dust inhalation exposure.").

Substantially similar evidence was presented in *Leite*, and the Ninth Circuit found it sufficient to meet the second and third elements of *Boyle*. *See Leite*, 749 F.34d at 1123 ("Sargent confirms that an outside vendor's equipment could not have been installed aboard Navy vessels

1  unless it complied with all applicable Navy specifications. . . . And Dr. Forman's affidavit,
2  supported by an adequate foundation based on his years of historical research, makes a colorable
3  showing that the Navy at all times knew at least as much about asbestos hazards as the equipment
4  manufacturers, leaving nothing for Crane to warn the Navy about.").

Accordingly, the Court finds that because Defendants have made a sufficient showing as to all three *Boyle* elements, they have shown by a preponderance of the evidence that they have a colorable federal defense to Plaintiffs' claim of design defect.

### b. Plaintiffs' Failure-to-Warn Claims

To establish the government contractor defense in the context of Plaintiffs' failure-to-warn claims, Defendants must prove that (1) the Navy exercised its discretion and approved certain warnings for Defendants' products, (2) Defendants provided the warnings required by the Navy, and (3) Defendants warned the Navy about any asbestos hazards that were known to Defendants but not to the Navy. *Leite*, 749 F.3d at 1123.

Again, Defendants meet all three elements. Here, like the defendant in *Leite*, Defendants offer declarations stating that the Navy issued detailed specifications governing the form and content of all warnings, that such specifications did not require warnings about asbestos hazards, and that contractors were not allowed to include warnings beyond those specifically required and approved by the Navy. *See* Dkt. No. 109, Schroppe Decl. ¶ 22 ("Furthermore, the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy. Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy."); Dkt. No. 113 Sargent Decl. ¶ 59 ("[T]he Navy developed precise specifications as to the nature of any markings, communication or directions affixed to or made a part of any equipment supplied by OEMs for ultimate use aboard Navy ships. OEMs would not have been permitted, under the specifications, associated regulations, and procedures, nor under the actual practice as it evolved in the field, to vary or to deviate in any respect from the Navy specifications in supplying

1  equipment, including affixing any type of warning or caution statement to equipment intended for
2  installation in a Navy ship, beyond those specifically required by the Navy without prior
3  discussion and express approval by the Navy.").

4  Next, as noted above, Defendants rely on a declaration by Dr. Forman, who, as the Ninth
5  Circuit observed in *Leite*, has "conducted extensive research on the extent of the Navy's
6  knowledge of asbestos hazards." *Leite*, 749 F.3d at 1120.  Dr. Forman, as he did in *Leite*, *see id*. at
7  1124, opines here that the Navy at all times knew at least as much about asbestos hazards as its
8  contractors, and was "committed to maintaining complete control over" the policies, and
9  procedures with respect to asbestos-containing materials and the corresponding warnings, *see* Dkt.
10 No. 112, Forman Decl. ¶¶ 20, 48 ("[T]he Navy's control extended to the warning and/or other
11 written materials to be supplied with such equipment . . . . The Navy was committed to
12 maintaining complete control over existing military specifications, policies and procedures with
13 respect to asbestos-containing materials and worker practices with those materials. The Navy
14 maintained a fierce autonomy over hazard recognition and control, because the Navy considered
15 itself the ultimate authority on naval systems and military workplaces. Regardless of the source of
16 other information, the Navy viewed its unique knowledge as a strategic advantage in addressing
17 hazard identification and control in its workplaces."). Dr. Forman's affidavit, supported by an
18 adequate foundation based on his years of historical research, makes a colorable showing that the
19 Navy at all times knew at least as much about asbestos hazards as the equipment manufacturers,
20 leaving nothing for Defendants to warn the Navy about.

21 Accordingly, Defendants have shown that they have a colorable federal contractor defense
22 to Plaintiffs' failure to warn claims, satisfying the third element of § 1442(a)(1).

23 At this stage, Defendants do not have to prove that their government contractor defense is
24 in fact meritorious. *Leite*, 749 F.3d at 1124. "As the Supreme Court has held, a defendant
25 invoking § 1442(a)(1) 'need not win [its] case before [it] can have it removed.' All that [a
26 defendant] must prove by a preponderance of the evidence is that its government contractor
27 defense is 'colorable.'" *Id*. Defendants have done so here, and thus Plaintiffs' motion to remand
28 is denied.

### B. Motion for Fees

Under the removal statute, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id*.

Plaintiffs seek to recover reasonable attorneys' fees incurred as a result of contesting Defendants' removal. Dkt. No. 87 at 20. Because the Court has denied the motion to remand, there is no basis for awarding attorneys' fees, and Plaintiffs' motion is denied.

## IV. CONCLUSION

Plaintiffs' motion for remand, Dkt. No. 87, is **DENIED**.

The Court SETS a telephonic case management conference on October, 17 2023, at 2:00 p.m., and DIRECTS the parties to submit a joint case management statement by October 10, 2023. All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check-in with the CRD. The parties should be prepared to discuss how to move this case forward efficiently.

**IT IS SO ORDERED.**

Dated:  9/27/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge