1

**MAUNE.RAICHLE.HARTLEY.FRENCH & MUDD, LLC**
David L. Amell, Esq. (State Bar No. 227207)

2
Rabiah N. Oral, Esq. (State Bar No. 319905)
Marissa Y. Uchimura, Esq. (State Bar No. 284385)

3
1900 Powell Street, Suite 200
Emeryville, California 94608

4
Telephone:  (800) 358-5922
Facsimile:  (314) 241-4838

5
damell@mrhfmlaw.com
roral@mrhfmlaw.com

6
muchimura@mrhfmlaw.com

7
Attorneys for Plaintiffs

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

11 | MICHAEL R. MARCUS and VICTORIA L. MARCUS, | Case No.: 4:22-cv-09058-HSG

12 | | [Alameda County Superior Court Case No.: 22CV021840]

13 | Plaintiffs, |

14 | vs. | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS CLARK RELIANCE CORPORATION, Individually and as successor-in-interest to JERGUSON GAGE AND VALVE COMPANY, ELECTROLUX HOME PRODUCTS, INC., as successor in interest to COPES-VULCAN AND SPIRAX SARCO, INC.'S MOTION FOR SUMMARY JUDGMENT**

15 | AIR AND LIQUID SYSTEMS CORPORATION, SUCCESSOR-BY-MERGER TO BUFFALO PUMPS, INC., et al. |

16 | |

17 | Defendants. |

18 | |

19 | | Date:          May 9, 2024
Time:          2:00 p.m.

20 | | Courtroom:   02, 4th Floor
District Judge: Hon. Haywood S. Gilliam, Jr.

21 | | Filed in State Court: November 15, 2022

22 | | Removed to NDCA: December 21, 2022
Trial Date:          September 9, 2024

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2    I.     INTRODUCTION ........................................................................................................ 1

3    II.    STATEMENT OF THE FACTS ................................................................................. 1

4         A.   Mr. Marcus's Work With Defendants Products ................................................ 1

5              1.    Electrolux Home Products, Inc. (as successor-in-interest to Copes-Vulcan, Inc. ............. 2

6              2.    Clark-Reliance (as successor-in-interest to Jerguson Gage and Valve Company) .......... 2

7              3.    Spirax Sarco ........................................................................................... 3

8         B.   The Navy Did Not Require Equipment Manufacturers to Use Asbestos in Their Products
9              or Prohibit Asbestos Warnings ........................................................................ 3

     III.   EVIDENTIARY OBJECTIONS ................................................................................ 6
10
     IV.    LEGAL ARGUMENT ............................................................................................... 6
11
          A.   Defendants Have Not Met Their Burden of Establishing That *Boyle's* Government
12             Contractor Defense Applies As A Matter of Law ............................................. 7

13             1.    The government contractor defense does not apply to federal maritime law claims ....... 7

14             2.    Even if the defense is available, Defendants have not met their burden of demonstrating
               that it applies as a matter of law ........................................................... 9
15
          B.   Defendants Have Not Met Their Burden on Their *Yearsley* Derivative Sovereign
16             Immunity Defense ........................................................................................... 11

17        C.   Defendants Are Not Entitled to Summary Judgment on Mrs. Marcus's Loss of
               Consortium Cause of Action ........................................................................... 13
18
     V.     CONCLUSION ......................................................................................................... 13
19

20

21

22

23

24

25

26

27

28   PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS
     CLARK RELIANCE CORPORATION, ELECTROLUX HOME PRODUCTS, INC., AND SPIRAX SARCO,
     INC.'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

*Boyle v. United Technologies Corp.*
487 U.S. 500 (1988) ................................................................... 1, 7, 8, 9

*Briggs v. Air & Liquid Systems Corp.*
2012 WL 975875 (E.D. Pa. Feb. 13, 2012) .................................................. 7

*Butler v. Ingalls Shipbuilding, Inc.*
89 F.3d 582 (9th Cir. 1996) ................................................................ 9

*Cabalce v. VSE Corp.*
922 F.Supp.2d 1113, 1123 (D. Haw. 2013) ...................................... 11, 12, 13

*Getz v. Boeing Co.*
654 F.3d 852 (9th Cir. 2011) ................................................................ 9

*Gomez v. Campbell-Ewald Co.*
768 F.3d 871, 880 (9th Cir. 2014) ............................................... 8, 12, 13

*Griffin v. JTSI, Inc.*
654 F.Supp.2d 1122, 1137 & n. 30 (D.Haw. 2008) .................................... 11

*In re Hanford Nuclear Reservation Litig.*
534 F.3d 986, 1001 (9th Cir. 2008) ..................................................... 11

*Nielsen v. George Diamond Vogel Paint Co.*
892 F.2d 1450, 1454 (9th Cir.1990) ....................................................... 8

*Snell v. Bell Helicopter Textron, Inc.*
107 F.3d 744 (9th Cir. 1997) ............................................................ 7, 9

*Willis v. Buffalo Pumps, Inc.*
34 F.Supp.3d 1117 (S.D. Cal. 2014) ........................................................ 9

*Willis v. BW IP It'l Inc.*
811 F.Supp.2d 1146 ......................................................................... 7

*Yearsley v. W.A. Ross Const. Co.*
309 U.S. 18 (1940) .................................................................... 6, 7, 11

## I.   INTRODUCTION

Plaintiffs hereby oppose Defendants Electrolux Home Products, Inc., Clark-Reliance Corporation, and Spirax Sarco Inc.'s ("Defendants") Motion for Summary Judgment.

Defendants' motion for summary judgment based on the affirmative defense established by *Boyle v. United Technologies Corp.* 487 U.S. 500 (1988) must be denied. First, the government contractor defense is based on federal preemption of state law claims; it does not apply to claims brought pursuant to federal maritime law like those at issue here. Second, even if *Boyle* were to apply, Defendants have not met their burden of demonstrating that, as a matter of law, the government contractor defense applies to bar Plaintiffs' claims. Defendants failed to produce any contract with the Navy, failed to identify any government specifications which required them to incorporate asbestos into their products, and failed to present evidence that the Navy prohibited them from providing asbestos warnings with their products. Additionally, Plaintiffs present affirmative evidence here demonstrating that Defendants had latitude to select asbestos or non-asbestos materials when designing their products, and to issue warnings of asbestos hazards. This evidence establishes triable issues of fact regarding Defendants' government contractor defense requiring denial of this motion. On this showing, Defendants likewise have not met their burden of establishing that they are immune from suit based on the doctrine of derivative sovereign immunity. Defendants' motion should be denied.

## II.   STATEMENT OF THE FACTS[1]

### A.   Mr. Marcus's Work With Defendants Products

Mr. Marcus served in the United States Navy from June of 1966 until his retirement as Boiler Technician Master Chief in 1986. (Deposition of Michael Marcus, **Exhibit A** at 13:25-14:2, 14:13-22, 28:25-29:8; Declaration of Michael Marcus, **Exhibit B** at ¶ 3). For the entirety of his naval career, Mr. Marcus worked as a boiler technician and boiler repairman. (**Exhibit A** at

---

[1] Unless otherwise indicated, all Exhibits referenced throughout this motion are attached to the Declaration of Marissa Y. Uchimura submitted in support of Plaintiffs' opposition to Defendants'' motion.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS CLARK RELIANCE CORPORATION, ELECTROLUX HOME PRODUCTS, INC., AND SPIRAX SARCO, INC.'S MOTION FOR SUMMARY JUDGMENT

13:25-27:11; **Exhibit B** at ¶ 3). During his career, Mr. Marcus personally worked around all of the equipment located in the machinery spaces of naval ships. (**Exhibit B** at ¶ 9).

### 1. Electrolux Home Products, Inc. (as successor-in-interest to Copes-Vulcan, Inc.

Mr. Marcus repacked and replaced gaskets on Copes-Vulcan soot blowers – integral parts of boilers that used steam to clean the internal tubes when the boilers were in operation. (**Exhibit A**, 43:3-8, 43:16-18, 46:12-20). He used a wire brush and scrapers to remove gaskets and packing pullers for the packing before blowing it with compressed air. (*Id.* at 43:23-44:8.) This created dirty and dusty conditions. (*Id*. at 44:23-45:20). The replacement gaskets and packing that he used were specified by the manufacturer. (*Id.* at 45:22-46:8). Mr. Marcus worked on "too many" Copes-Vulcan soot blowers to count during lengthy Naval career. (*Id.* at 46:12-20.)

Mr. Marcus also removed and replaced gaskets and packing from Copes-Vulcan valves. (**Exhibit A**, 67:24-68:7, 60:22-24, 61:3-9, 62:19-24, 63:4-9). Pulling out old packing, scraping off old gaskets, and blowing out the valves with compressed air created dirty and dusty conditions. (*Id.* at 61:12-24, 62:6-14, 63:17-64:1.) He worked on Copes-Vulcan valves frequently while working for the Navy. (*Id.* at 68:8-17.)

### 2. Clark-Reliance (as successor-in-interest to Jerguson Gage and Valve Company)

Mr. Marcus used Jerguson sight glasses to determine the water level in a boiler. (**Exhibit A**, 46:22-47:11.) He did complete rebuilds of Jerguson sight glasses during his service in the Navy which involved the removal and replacement of gaskets on those pieces of equipment. (*Id.* at 47:13-48:8, 50:17-19.) He removed the old gaskets with a scraper, cleaned the surface with a pneumatic wire brush, and then blew everything out with compressed air. (*Id.*) That work on created dust. (*Id.* at 48:9-16.) The replacement gaskets he installed were Jerguson brand. (*Id.* at 48:21-49:12.) Mr. Marcus knew the replacement gaskets were Jerguson's because he saw the manufacturer's name on the bag. (*Id.* at 49:15-21.)

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS CLARK RELIANCE CORPORATION, ELECTROLUX HOME PRODUCTS, INC., AND SPIRAX SARCO, INC.'S MOTION FOR SUMMARY JUDGMENT

### 3.    Spirax Sarco

Mr. Marcus worked on Sarco steam traps during his service in the Navy. (**Exhibit A**, 69:24-70:7, 71:4-8, 71:13-15). He removed and replaced gaskets on Sarco steam traps with a scraper and pneumatic wire brush. (*Id.* at 70:12-14). This work created dusty conditions. (*Id.* at 70:15-18). The replacement gaskets that he used were specified by the manufacturer. (*Id.* at 70:19-22). In his 17 years working aboard ships for the Navy, Mr. Marcus worked with Sarco steam traps "[t]oo many times to count." (*Id.* at 71:16-22).

### B.    The Navy Did Not Require Equipment Manufacturers to Use Asbestos in Their Products or Prohibit Asbestos Warnings

Plaintiffs retained retired Navy Captain Francis Burger as an expert in this case. Captain Burger issued a report, as well as a declaration that distills the opinions in his report. (Declaration of Captain Burger, **Exhibit C**; Report of Captain Burger, **Exhibit D**). Captain Burger has decades of knowledge, training and experience with respect to equipment and machinery on Navy ships, along with knowledge of the use of asbestos-containing materials. (**Exhibit C** at ¶¶ 2-14, 17-20).

Captain Burger, based upon his extensive specialized knowledge, training and expertise in Marine Engineering and the U.S. Navy, provides extensive admissible evidence that not only did original equipment manufacturers design and specify their own products – including internal asbestos components – to meet the U.S. Navy's *performance* standards, but also that the U.S. Navy merely rubber-stamped those OEM specifications before incorporating them into military specifications. (**Exhibit C** at ¶¶ 17-29, 64). The Navy Bureau of Ships did publish specifications for the Navy's machinery and equipment, but these documents did not tell manufacturers how to design their products. (*Id.* at ¶ 23). Specifically with regard to gaskets and packing, most of the specifications allowed ***a range of materials that included both asbestos-containing and non-asbestos materials*** for most services and most temperature and pressure ranges. (*Id.* at ¶¶ 23, 88). Equipment manufacturers did not have to supply asbestos-containing materials in order to

comply with any specifications from the Navy. (*Id.*) Furthermore, while the Navy had Military Specifications ("MIL-Specs") and Qualified Products Lists ("QPLs"), the MIL-Specs and QPLs were guidelines, not a prohibitive list of the only products that could be used aboard Navy ships. (*Id.* at ¶¶ 60-65). So long as a product fit the "form, fit and function" of the MIL-Spec, it could be substituted in place of the pre-qualified product.[2] (*Id.*)

It was the equipment manufacturers that designed and engineered the equipment that they manufactured, and they were often consulted in the development of military specifications for their equipment. (**Exhibit C** at ¶ 22). In addition, as between the Navy and the product manufacturers, the product manufacturers had the highest level of expertise in the operation and maintenance of equipment they designed, manufactured and sold to the Navy. (*Id.*) The Navy regularly consulted with product manufacturers to provide the Navy with the manufacturers' expertise and advice on the safe and efficient operation of the equipment manufactured by the product manufacturer.  (*Id.*)

Having spent over 20 years serving in the Navy, Mr. Marcus likewise has extensive specialized knowledge, training and experience in the Navy's process and procedure for obtaining materials used in the repair of Naval propulsion equipment. (**Exhibit B** at ¶ 8-13). He has used, reviewed and become thoroughly familiar with specifications used in the repair of U.S. Navy vessels. He is also familiar with the process and procedure by which manufacturers participated in the installation, use and maintenance of their products on U.S. Navy ships. (*Id.* ¶ 8). During his time drafting the curriculum to educate boiler technicians, he also worked with the Naval Ship Systems Command ("NAVSHIPS", now known as Naval Sea Systems Command ("NAVSEA")), technical manuals on a regular and recurring basis. (*Id.*)

Through his extensive training and experience, Mr. Marcus is familiar with and has worked with MIL-Specs. (**Exhibit B** at ¶ 11). The Navy's specifications for all equipment and related materials were performance specifications; the Navy did not require that manufacturers

---

[2] See also, **Exhibit D** at ¶¶ 16-28, 64-69).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS CLARK RELIANCE CORPORATION, ELECTROLUX HOME PRODUCTS, INC., AND SPIRAX SARCO, INC.'S MOTION FOR SUMMARY JUDGMENT

utilize asbestos-containing materials or products. (*Id.*) All maintenance and repair of propulsion equipment, including boilers and all auxiliary equipment in the fire rooms, was performed pursuant to manufacturers' tech manuals and the manufacturers' specifications therein. (*Id.*) The materials and products used both internally and externally on boiler room equipment were determined by the manufacturers of the equipment. (*Id.*) The Navy relied on the manufacturers to be the experts as to the safe maintenance and repair of their equipment. (*Id.*)

The manufacturers further supplied OEM replacement component parts for maintenance and repair of the equipment. (**Exhibit B** at ¶ 13). The United States Navy did not make the determination as to what materials or replacement parts manufacturers should utilize or specify; the United States Navy was concerned only with performance, and the manufacturers determined which materials to use to meet the performance standards of the Navy. (*Id.*)

Captain Burger also traces Navy specifications that required cautions and warnings in manufacturers' instruction books and technical manuals, starting with the General Specifications for Machinery, Subsection S1-1, PLANS, issued December 1, 1936, and continuing through a series of military specifications beginning in 1950 with MIL-B-15071 (SHIPS). (**Exhibit C** at ¶¶ 30-42). Through these specifications, equipment and machinery manufacturers were required to provide warnings concerning "special hazards", include safety precautions and provide directions for the use of safety devices with their equipment technical manuals. (*Id.* at ¶ 89). The warnings were intended to be widely published to Navy personnel, including the sailors that were working on and around the equipment, as copies of the technical manuals were required to be shipped with their equipment and additional copies were to be provided for each ship on which the equipment was installed. (*Id.*)  Further, in the event hazards became known to the equipment manufacturers after the equipment had been sold and shipped, warnings of these hazards were to be provided through new pages for equipment manuals.  (*Id.*; see also, **Exhibit D**, ¶¶ 29-57).

///

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS CLARK RELIANCE CORPORATION, ELECTROLUX HOME PRODUCTS, INC., AND SPIRAX SARCO, INC.'S MOTION FOR SUMMARY JUDGMENT

Manufacturers were not precluded by any military specification from providing warnings of asbestos hazards, but were required to warn of procedures that might harm or kill Navy personnel. In 1961, the Navy encouraged the use of commercial practices in its technical manuals.[3] (**Exhibit C** at ¶ 78-79, 90-92). Not once in Captain Burger's career has he seen an instance in Navy policy or practice where the government forbade a manufacturer from including a warning, including any warning related to asbestos, whether on the body of its equipment, on its packaging, or in its manuals, bills of materials, or plans. (*Id.* at ¶ 30). "Warnings from the original designer were <u>accepted as necessary</u>." (*Id.*, emphasis in original). This is consistent with Mr. Marcus's personal knowledge that the Navy permitted manufacturers to place warnings related to safe use on product packaging and in tech manuals. (**Exhibit B** at ¶ 12).

### III.   EVIDENTIARY OBJECTIONS

Plaintiffs object to the Report of Christopher Herfel as Mr. Herfel is not qualified to offer opinions regarding the Navy's historical practices in procuring equipment and materials. Plaintiffs have filed a separate Daubert motion to exclude Mr. Herfel's opinions and preclude him from testifying at trial (see, Dkt. No. 413), and Plaintiffs incorporate the arguments and evidence set forth in that motion into their opposition here.

### IV.   LEGAL ARGUMENT

Defendants do not dispute that Mr. Marcus worked with asbestos-containing products for which they are liable. Defendants do not contend that Mr. Marcus's work with their products did not result in his exposure to asbestos. Defendants do not dispute that asbestos exposure attributable to their products was a substantial factor in causing Mr. Marcus to develop terminal cancer. The sole bases on which Defendants seek summary judgment are the affirmative defenses of *Boyle's* government contractor defense and derivative sovereign immunity under

---

[3] Under the Navy's September 24, 1956, Uniform Labeling Program, manufacturers were directed to consult the "Warning Labels Guide" which recommended warnings for harmful dusts under a definition which included dusts like asbestos.  (**Exhibit C** at ¶¶ 45-46.) The Navy also instructed manufacturers to warn of "toxic hazards" which included materials emitting harmful "dust," and causing injuries "from one exposure (acute) or from repeated exposures over a prolonged period (chronic.)." (*Id.* at ¶ 45.)

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS CLARK RELIANCE CORPORATION, ELECTROLUX HOME PRODUCTS, INC., AND SPIRAX SARCO, INC.'S MOTION FOR SUMMARY JUDGMENT

*Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940). As explained below, Defendants have not met their burden of demonstrating that either of these affirmative defenses apply as a matter of law, such that Defendants could be entitled to summary judgment.

### A. Defendants Have Not Met Their Burden of Establishing That *Boyle's* Government Contractor Defense Applies As A Matter of Law

*Boyle's* government contractor defense is an affirmative defense; Defendants have the burden of establishing it at trial. (*Snell v. Bell Helicopter Textron, Inc.,* 107 F.3d 744, 746 (9th Cir. 1997)). Where, as here, a defendant moves for summary judgment based on an affirmative defense that it will bear the burden of proving at trial, the issue is not whether the defendant produced sufficient evidence to establish the defense, but whether its evidence compels a finding in its favor as a matter of law, i.e., that no reasonable jury could fail to find that the defense had been established. (*Id.*). "Ordinarily, because of the standard applied at the summary judgment stage, defendants are not entitled to summary judgment pursuant to the government contractor defense." (*Briggs v. Air & Liquid Systems Corp.*, 2012 WL 975875 (E.D. Pa. Feb. 13, 2012); see also, *Willis v. BW IP It'l Inc.,* 811 F.Supp.2d 1146, 1157 (denying summary judgment based on government contractor defense where plaintiff presented expert testimony contradicting opinions of defendants' experts)). The question here at the summary judgment stage is whether based on the evidence presented, and resolving disputed facts in favor of Plaintiffs, a reasonable jury could reject Defendants' government contractor defense; if so, triable issues of fact exist and Defendants' motion must be denied. (*Id.*; see also, *Boyle*, 487 U.S. at 514 ("[W]hether the facts establish the conditions for the defense is a question for the jury.")).

#### 1. The government contractor defense does not apply to federal maritime law claims

Plaintiffs' claims in this case are brough under the general maritime law of the United States. (Exhibit A to the Declaration of Nicole Gage, Dkt. No. 357-4, ¶ 19, 9:5-7.) *Boyle* does not apply to Federal maritime claims, and as such, Defendants cannot seek its protection in this case.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS CLARK RELIANCE CORPORATION, ELECTROLUX HOME PRODUCTS, INC., AND SPIRAX SARCO, INC.'S MOTION FOR SUMMARY JUDGMENT

It is clear from the first sentence of the Supreme Court's opinion in *Boyle,* that the opinion deals with state tort law claims: "This case requires us to decide when a contractor providing military equipment to the Federal Government can be held liable under *state tort law* for injury caused by a design defect." (487 U.S. at 502). The holding is also specific to state law: "Liability for design defects in military equipment cannot be imposed, pursuant to *state law*, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. (*Id.* at 512, emphasis added.)

The 9th Circuit has held that *Boyle's* government contractor defense relates to federal pre-emption of state law – "Nor does the Boyle pre-emption doctrine provide Campbell–Ewald with a relevant defense. The doctrine precludes state claims where the imposition of liability would undermine or frustrate federal interests. (See *Nielsen v. George Diamond Vogel Paint Co*., 892 F.2d 1450, 1454 (9th Cir.1990) (explaining that the Boyle standard is used to determine when "federal law should displace state law")."  (*Gomez v. Campbell-Ewald Co*., 768 F.3d 871, 880 (9th Cir. 2014), [aff'd but criticized] 577 U.S. 153, 136 S. Ct. 663, (2016).) The Court explained that "[a]lthough *Boyle* in effect created a defense for some government contractors, it is fundamentally a pre-emption case." (*Campbell-Ewald,* 768 F.3d at 881.) *Boyle* itself emphasizes the displacement question and indicates that it should not be construed as "broad immunity precedent" for all government contractors. (*Id.*) Its holding "is rooted in pre-emption principles and not in any widely available immunity or defense." (*Id.*) Therefore, because the plaintiff brought claims under federal law, pre-emption was not an issue and "[t]he *Boyle* doctrine is thus rendered inapposite." (*Id.*)

///

///

///

1

**2.      Even if the defense is available, Defendants have not met their burden of demonstrating that it applies as a matter of law**

2      Under *Boyle*, a government contractor only receives immunity from state tort liability for

3   design defects in military equipment if it establishes: "(1) the United States approved reasonably

4   precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier

5   warned the United States about the dangers in the equipment that were known to the supplier but

6   not to the United States." (*Boyle*, 487 U.S. at 512).

7      To satisfy the first Boyle requirement, Defendants must establish two distinct

8   requirements: that there were reasonably precise specifications for the particular defective

9   features of its products, and that the government actually participated in discretionary design

10   decisions with regard to those features. (*Snell*, 107 F.3d at 747). This is important; *Boyle* requires

11   specific government involvement and discretion with regard to the particular design of the actual

12   injury-producing item. "[A]s we explained in *Snell*…the government's approval of a particular

13   specification must be more than a cursory 'rubber stamp' approving the design. [citation] Rather,

14   approval must result from a 'continuous exchange' and 'back and forth dialogue' between the

15   contractor and the government. (*Butler v. Ingalls Shipbuilding, Inc*., 89 F.3d 582, 585 (9th Cir.

16   1996)). When the government engages in a thorough review of the allegedly defective design

17   and takes an active role in testing and implementing that design, *Boyle's* first element is met."

18   (*Getz v. Boeing Co*., 654 F.3d 852, 861 (9th Cir. 2011)). It follows that Defendants must

19   therefore show that they and the government engaged in a "continuous exchange" and "back and

20   forth dialogue" regarding the use of asbestos in each of the specific components alleged to have

21   exposed Mr. Marcus to asbestos and contributed to his development of mesothelioma. (See, e.g.,

22   *Willis v. Buffalo Pumps, Inc.*, 34 F.Supp.3d 1117, 1125 (S.D. Cal. 2014)). Defendants make no

23   such showing here. Nothing in the evidence submitted by Defendants demonstrates that the

24   Navy, and not Defendants themselves, made the determination that the equipment Defendants

25   furnished to the Navy should incorporate asbestos-containing gaskets and/or packing.

26   ///

27

28   PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS
CLARK RELIANCE CORPORATION, ELECTROLUX HOME PRODUCTS, INC., AND SPIRAX SARCO,
INC.'S MOTION FOR SUMMARY JUDGMENT

1   Defendants' broad assertion that the government supposedly exercised general control

2   over the design and production of all shipboard equipment does not suffice to satisfy the first

3   prong of *Boyle*. Defendants have not produced a single reasonably precise government

4   specification mandating the use of asbestos in their equipment. In fact, Defendants fail to

5   specifically address the design characteristics or requirements for its equipment or component

6   parts whatsoever. It is impossible to determine whether the Navy exercised actual discretion or

7   control over the design of Defendants' equipment (or their component parts and materials) used

8   on Mr. Marcus's ships without said evidence. *Boyle's* defense does not apply if the government

9   contractor itself is responsible for the defect and such a determination simply cannot be made in

10  the absence of evidence.

11  Furthermore, Plaintiffs Naval expert Captain Burger, based upon his extensive

12  specialized knowledge, training and expertise in Marine Engineering and the U.S. Navy

13  controverts the unfounded opinions offered by Mr. Herfel, providing admissible evidence that

14  not only did original equipment manufacturers design and specify their own products – including

15  internal asbestos components – to meet the Navy's mere performance standards, but also that the

16  Navy merely rubber-stamped those OEM specifications before incorporating them into military

17  specifications. (**Exhibit C** at ¶¶ 17-29, 60-65, 88). Captain Burger also refutes Mr. Herfel's

18  unsupported claims that military specifications prevented Defendants from providing asbestos

19  warnings with their asbestos-containing products. Captain Burger identifies actual military

20  specifications proving that the Navy expected and relied upon equipment manufacturers to

21  provide warnings to it and its sailors regarding the manufacturer's specific products, about which

22  the manufacturers – not the Navy – had superior knowledge and information. (*Id.* at ¶¶ 30-42,

23  90). Given that Plaintiffs have submitted evidence and affidavits controverting Defendants'

24  evidence as to whether the Navy issued reasonably precise specifications for the design defect at

25  issue – the asbestos-content of Defendants' equipment and replacement parts and materials – and

26  whether the Navy issued specifications that constrained Defendants from providing asbestos

27

28

10

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS CLARK RELIANCE CORPORATION, ELECTROLUX HOME PRODUCTS, INC., AND SPIRAX SARCO, INC.'S MOTION FOR SUMMARY JUDGMENT

1  warnings, a genuine issue of material fact exists as to Defendants' affirmative defense, requiring

2  denial of this motion for summary judgment.

3      **B.**    **Defendants Have Not Met Their Burden on Their *Yearsley* Derivative**
           **Sovereign Immunity Defense**

4

5        In addition to *Boyle's* government contractor defense, Defendants also claim that they are

6  entitled to derivative sovereign immunity under the Supreme Court's holding in *Yearsley,* 309

7  U.S. 18. This argument is misplaced.

8        First, it is not clear that the Ninth Circuit recognizes a "derivative government immunity"

9  defense separate and apart from the government contractor defense. (See, e.g., *Cabalce v. VSE*

10  *Corp.*, 922 F.Supp.2d 1113, 1123 (D. Haw. 2013) ("[I]t is unclear whether a 'derivative

11  sovereign immunity defense' (or a 'shared immunity defense') derived from *Yearsley* is truly

12  distinct from a 'government contractor defense' derived from *Boyle*"); *In re Hanford Nuclear*

13  *Reservation Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008) (observing that *Yearsley* "arguably

14  planted the seeds of the government contractor defense" and stating that "[n]othing in *Yearsley*

15  extended immunity to military contractors exercising a discretionary governmental function");

16  *Griffin v. JTSI, Inc*., 654 F.Supp.2d 1122, 1137 & n. 30 (D.Haw. 2008) (stating that *Yearsley* was

17  "the first case to apply some form of the government contractor defense" and noting that "[s]ince

18  *Boyle*, the Courts of Appeals have varied greatly in their range of application of the defense").

19        Second, to the extent that the Ninth Circuit has entertained a "derivative government

20  immunity" defense, it has treated it as largely the same as the government contractor defense.  In

21  other words, similar to the government contractor defense,

22          The *Yearsley* doctrine is subject to two important limitations. First,
        'a key premise of *Yearsley*, and one that has been reiterated by

23          [various federal courts] is that the contractor was following the
        sovereign's directives.' " (citations omitted). *Yearsley*

24          "acknowledged that an agent or officer of the Government
        purporting to act on its behalf, but in actuality exceeding his

25          authority, shall be liable for his conduct causing injury to another."
        *Id*. (citations omitted). "Second, derivative sovereign immunity is

26          not available to contractors who act negligently in performing their
        obligations under the contract."

27  11

1    (*Cabalce*, *supra*, 922 F.Supp.2d at 1125-1127.)

2    These limitations were addressed by *Gomez v. Campbell-Ewald* 577 U.S. 153, 166 where the

3    United States Supreme Court in found that the mere fact that a defendant performs work under a

4    contract with the government is not sufficient to establish immunity under *Yearsley*.

5         *Campbell-Ewald* involved a defendant with whom the Navy contracted to develop a text

6    message recruiting campaign directed towards young adults who had "opted in" to receive

7    marketing solicitations regarding service in the Navy. (*Campbell-Ewald,* 577 U.S. at 153). The

8    defendant's subcontractor transmitted the Navy's message to over 100,000 recipients, including

9    the plaintiff who had not consented to receive text messages. (*Ibid*.) The plaintiff brought a class

10   action lawsuit, alleging that the defendant had violated the Telephone Consumer Protection Act

11   (TCPA) which prohibits the use of an automatic dialing system to send text messages absent the

12   recipient's prior express consent. (*Ibid*.) The district court granted summary judgment, finding

13   that as a contractor acting on the Navy's behalf, the defendant acquired the Navy's sovereign

14   immunity from suit under the TCPA. (*Ibid*.)

15        The Ninth Circuit reversed and the United States Supreme Court affirmed that reversal

16   holding that a defendant's status as a government contractor "[did] not entitle it to 'derivative

17   sovereign immunity,' *i.e.*, the blanket immunity enjoyed by the sovereign." The Supreme Court

18   acknowledged that government contractors "obtain certain immunity in connection with work

19   they do pursuant to their contractual undertakings with the United States", but unlike the

20   government that immunity is not absolute. (*Campbell-Ewald*, 577 U.S. at 166). The immunity

21   granted to a government contractor extends only to actions which are done in compliance with

22   the government's explicit instructions; a private person does not acquire the government's

23   "embracive immunity" merely because he is doing government work. (*Ibid*.) Thus because there

24   was evidence that the Navy only authorized the defendant to send text messages to individuals

25   who had "opted in" to receive solicitations, the defendant was not shielded from liability for

26   transmitting messages to individuals like the plaintiff who had not consented to receiving such

27

28

1   messages. (*Id*. at 168). "When a contractor violates both federal law and the Government's

2   explicit instructions, as here alleged, no 'derivative immunity' shields the contractor from suit by

3   persons adversely affected by the violation." (*Id*. at 166).

4        Under the rationale of *Campbell-Ewald,* 577 U.S. 153, Defendants have not demonstrated

5   that they are immune from suit under *Yearsley*. As is set forth in detail above, Defendants failed

6   to submit any evidence that they were required by the Navy to engage in the wrongful conduct

7   for which Plaintiffs seek to hold them liable. They have not shown that they were following the

8   sovereign's directives when they designed, manufactured and supplied asbestos-containing

9   equipment without asbestos warnings. Thus, "[t]he harm alleged against [Defendants] can be

10  traced, not to the government's actions or decisions, but to the contractor's independent decision

11  to perform the task in an unsafe manner." (See, *Cabalce*, *supra*, at 1127). On these facts, there is

12  no basis to conclude that Defendants are entitled to derivative immunity from suit under

13  *Yearsley*.

14      **C.    Defendants Are Not Entitled to Summary Judgment on Mrs. Marcus's Loss
                of Consortium Cause of Action**

15

16      The only basis on which Defendants seek summary judgment on Mrs. Marcus's claim for

17  loss of consortium is the fact that loss of consortium is a derivative cause of action that "stands

18  or falls" with Mr. Marcus's underlying claims. Because Defendants have not shown that they are

19  entitled to summary judgment on Mr. Marcus's claims, they have likewise failed to show that

20  they are entitled to summary judgment on Mrs. Marcus's loss of consortium claim.

21                          **V.    CONCLUSION**

22      For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants'

23  motion for summary judgment.

24  DATED: April 18, 2024              Maune Raichle Hartley French & Mudd LLC

25

26                                      By:  _____

27                                          Marissa Y. Uchimura
                                            Attorney for Plaintiffs

13

28  PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS
    CLARK RELIANCE CORPORATION, ELECTROLUX HOME PRODUCTS, INC., AND SPIRAX SARCO,
    INC.'S MOTION FOR SUMMARY JUDGMENT

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action. My business address is:

      Maune Raichle Hartley French & Mudd, LLC
      1900 Powell Street, Suite 200, Emeryville, California 94608
      Telephone No. (314) 241-2003; Facsimile No. (314) 241-4838

On **April 18, 2024,** I caused to be served the document entitled:

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS CLARK RELIANCE CORPORATION, Individually and as successor-in-interest to JERGUSON GAGE AND VALVE COMPANY, ELECTROLUX HOME PRODUCTS, INC., as successor in interest to COPES-VULCAN AND SPIRAX SARCO, INC.'S MOTION FOR SUMMARY JUDGMENT**

**DECLARATION OF MARISSA Y. UCHIMURA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS CLARK RELIANCE CORPORATION, Individually and as successor-in-interest to JERGUSON GAGE AND VALVE COMPANY, ELECTROLUX HOME PRODUCTS, INC., as successor in interest to COPES-VULCAN AND SPIRAX SARCO, INC.'S MOTION FOR SUMMARY JUDGMENT**

**[PROPOSED] ORDER DENYING DEFENDANTS CLARK RELIANCE CORPORATION, Individually and as successor-in-interest to JERGUSON GAGE AND VALVE COMPANY, ELECTROLUX HOME PRODUCTS, INC., as successor in interest to COPES-VULCAN AND SPIRAX SARCO, INC.'S MOTION FOR SUMMARY JUDGMENT**

on all the parties to this action addressed as stated on the attached service list:

☐    **OFFICE MAIL**: By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with U.S. Postal Service on the same day in the ordinary course of business.

☐    **EXPRESS U.S. MAIL**: Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐    **ELECTRONIC MAIL**: By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒    **E-FILING**: By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐      **FAX**: By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: **April 18, 2024**

_____
My-Hanh Nguyen

2

PROOF OF SERVICE

Case No. 4:22-cv-09058-HSG

*Michael R. Marcus vs. Air & Liquid Systems Corporation, et al.*
**United States District Court-Northern District of California**
**Case No. 4:22-cv-09058-HSG**

### SERVICE LIST

Michael J. Pietrykowski
James G. Scadden
Glen R. Powell
GORDON REES SCULLY MANSUKHANI, LLP
1111 Broadway, Ste. 1700
Oakland, CA 94607
(510) 463-8600
Email: mpietrykowski@grsm.com
Email: jscadden@gordonrees.com
Email: gpowell@grsm.com
*Attorneys for Defendants AIR & LIQUID SYSTEMS CORPORATION, successor-by-merger to BUFFALO PUMPS, INC. and VELAN VALVE CORPORATION*

Jonathon Sayre
Elizabeth Rebecca Bain
CMBG3 LAW P.C.
100 Spectrum Center Drive, Suite 820
Irvine, California 926183
Email: jsayre@cmbg3.com
Email: ebain@cmbg3.com
*Attorney for Defendants ARMSTRONG INTERNATIONAL, INC., and WILLIAM POWELL COMPANY*

Edward R. Hugo
Bina Ghanaat
Robert J. Bugatto
HUGO PARKER, LLP
240 Stockton Street, 8th Floor
San Francisco, CA 94108
(415) 808-0310
Email: service@HUGOPARKER.com
*Attorneys for Defendants BWDAC, INC., EATON CORPORATION, as Successor-in-Interest to CUTLER-HAMMAR, INC. and FOSTER WHEELER ENERGY CORPORATION*

PROOF OF SERVICE

Case No. 4:22-cv-09058-HSG

Nicole Brown Yuen
Laila Rahimi-Keshari
FOLEY MANSFIELD
2185 North California Boulevard, Suite 575
Walnut Creek, CA 94596
nyuen@foleymansfield.com
lrahimikeshari@foleymansfield.com
(510) 590-9500
*Attorneys for Defendants BW/IP, INC., Individually and as successor-in-interest to BYRON JACKSON PUMPS, Clark Reliance Corporation, individually and as successor-in-interest to Jerguson Gage and Valve Company; and FLOWSERVE US, INC., Individually and as Successor-in-Interest to DURAMETALLIC CORPORATION*

Joseph Duffy
Amy J. Talarico
Marisa R. Chaves
Mitchell Tedesco
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
(415) 442-1000
Email: joseph.duffy@morganlewis.com
Email: amy.talarico@morganlewis.com
Email: marisa.chaves@morganlewis.com
Email: Mitchell.tedesco@morganlewis.com
*Attorney for Defendant CLEAVER BROOKS, INC., f/k/a CLEAVER-BROOKS, a Division of AQUA-CHEM, INC., GRINNELL LLC, HILL BROTHERS CHEMICAL COMPANY and ITT LLC, Individually and as successor-in-interest to LAWLER MANUFACTURING*

Shelley K. Tinkoff
HAWKINS PARNELL & YOUNG LLP
33 New Montgomery, 8th Floor
San Francisco, CA 94105-4537
Email: sktinkoff@hpylaw.com
(415) 979-0400
*Attorneys for Defendant DOMCO PRODUCTS TEXAS, INC., Individually and as Successor-In-Interest to, and formerly known as DOMCO INC. FLOOR PRODUCTS (TEXAS), AZROCK INDUSTRIES INC., UVALDE ROCK ASPHALT COMPANY*

PROOF OF SERVICE

Mark A. Love
Ernest D. Faitos
HAWKINS PARNELL & YOUNG LLP
33 New Montgomery, 8th Floor
San Francisco, CA 94105-4537
Email: efaitos@hpylaw.com
Email: mlove@hpylaw.com
***Attorney for Defendant THE DARCOID COMPANY OF CALIFORNIA***

Randall K. Bernard
HAWKINS PARNELL & YOUNG LLP
1 Post Street, Suite 2400
San Francisco, CA 94104
(415) 766-3200
rbernard@hpylaw.com
***Attorney for Defendant TRIPLE A MACHINE SHOP, INC.***

Nicole E. Gage
Lance Wilson
Daniel James Kelly, Esq.
TUCKER ELLIS LLP
201 Mission Street, Suite 2310
San Francisco, CA 94105
(415) 617-2105
Email: nicole.gage@tuckerellis.com
Email: lance.wilson@tuckerellis.com
Email: daniel.kelly@tuckerellis.com
***Attorneys for Defendants ELECTROLUX HOME PRODUCTS, INC., as successor in interest to COPES-VULCAN, FLOWSERVE US, INC., solely as successor to ROCKWELL MANUFACTURING COMPANY; ROCKWELL AUTOMATION, INC., individually and as successor-in-interest to ALLEN BRADLEY, CO., LLC, ALLEN-BRADLEY CO., ALLEN-BRADLEY CO., INC. and ROSTONE CORPORATION, and SPIRAX SARCO, INC***

Frank D. Pond
Timothy C. Pieper
James M. Buck
POND NORTH LLP
800 South Figueroa St., Suite 970
Los Angeles, CA 90017
(310) 850-5804
Email: tpieper@pondnorth.com
Email: jbuck@pondnorth.com
***Attorneys for Defendants FMC CORPORATION, Individually and as successor in interest to NORTHERN PUMP COMPANY, PEERLESS PUMP COMPANY, and STEARNS ELECTRIC COMPANY***

PROOF OF SERVICE

Case No. 4:22-cv-09058-HSG

Charles W. Jenkins
MANNING GROSS & MASSENBURG LLP
444 South Flower Street Suite 4100
Los Angeles, CA 90071
(213) 622-7300
Email: Cjenkins@mgmlaw.com
*Attorney for Defendant GARDNER DENVER, INC.*

Charles T. Sheldon
Derek S. Johnson
Katherine P. Gardiner
Emily E. Anselmo
WFBM, LLP
255 California Street, Suite 525
San Francisco, California 94111-4928
(415) 781-7072
Email: csheldon@wfbm.com
Email: djohnson@wfbm.com
Email: kgardiner@wfbm.com
Email: eanselmo@wfbm.com
Email: ehartley@wfbm.com
*Attorney for Defendants GENERAL ELECTRIC COMPANY, GTE CORPORATION,*
*successor in interest to ZINSCO ELECTRICAL PRODUCTS*

Jennifer A. Cormier
Kristi L.K. Young
Sean C. McGah
MANNING GROSS & MASSENBURG, LLP
101 Montgomery Street, Suite 2850
San Francisco, CA 94104
(949) 892-4700
Email: jcormier@mgmlaw.com
Email: kyoung@mgmlaw.com
Email: smcgah@mgmlaw.com
*Attorney for Defendant The Goodyear Tire & Rubber Company*

PROOF OF SERVICE

Case No. 4:22-cv-09058-HSG

Christopher O. Massenburg
David M. Glaspy
Lindsay Weiss
MANNING GROSS + MASSENBURG LLP
365 Canal Street, Suite 3000
New Orleans, LA 70130
(504) 535-2880
cmassenburg@mgmlaw.com
dglasby@mgmlaw.com
LWeiss@mgmlaw.com
*Attorney for Defendant Greene, Tweed & Co., Inc.*

Gottlieb J. Marmet
Andrew Livingston Sharp
Saleem Belbahri
FOLEY MANSFIELD
2185 North California Boulevard
Suite 575
Walnut Creek, CA 94596
(414) 287-1533
gjmarmet@vonbriesen.com
asharp@foleymansfield.com
sbelbahri@foleymansfield.com
*Attorney for Defendant J.R. Clarkson Company, LLC, Individually and as successor to the Kunkle Valve Company*

Edward E. Hartley
WFBM, LLP
255 California Street, Suite 525
San Francisco, California 94111-4928
(415) 781-7072
Email: ehartley@wfbm.com
*Attorney for Defendant VERIZON COMMUNICATIONS, INC., Individually and as successor in interest to GTE CORPORATION, successor in interest to ZINSCO ELECTRICAL PRODUCTS*

PROOF OF SERVICE

Case No. 4:22-cv-09058-HSG

1  Michael E. Sandgren
   Natalie G. Lashinsky
2  Rocheller R. Ileto
   Lisa L. Oberg
3  Paul D. Smith
   Lisa M. Rickenbacher
4  HUSCH BLACKWELL LLP
   1999 Harrison St., Suite 700
5  Oakland, CA 94612
   (510) 768-0915
6  Email: Michael.Sandgren@huschblackwell.com
7  Email: Natalie.Lashinsky@huschblackwell.com
   Email: Rochelle.Ileto@huschblackwell.com
8  Email: Lisa.Oberg@huschblackwell.com
   Email: Paul.Smith@huschblackwell.com
9  Email: Lisa.Rickenbacher@huschblackwell.com
   ***Attorneys for Defendants AURORA PUMP COMPANY; HONEYWELL INTERNATIONAL,***
10 ***INC., f/k/a ALLIED SIGNAL, INC., individually and as successor-in-interest to the BENDIX***
   ***CORPORATION, BENDIX AVIATION CORP., and THE SIGNAL COMPANIES, INC.,***
11 ***f/k/a SIGNAL OIL & GAS COMPANY, METALCLAD INSULATION, LLC and MORSE***
   ***TEC LLC f/k/a BORGWARNER MORSE TEC LLC, Individually and as Successor-In-***
12 ***Interest to BORGWARNER CORPORATION***

13

14 Bobbie R. Bailey
   Frederick W. Gatt
15 Edward Martinovich
   LEADER BERKON COLAO & SILVERSTEIN LLP
16 550 S. Hope Street, Suite 1850
   Los Angeles, CA 90071
17 Email: bbailey@leaderberkon.com
   Email: fgatt@leaderberkon.com
18 Email: emartinovich@leaderberkon.com
   ***Attorneys for Defendants IMO INDUSTRIES, INC., Individually and as successor in interest***
19 ***to DELAVAL TURBINE INC. and SHARPLES, INC.***

20
   Narine Levonyan
21 Berkes Crane Robinson Seal LLP
   515 South Figueroa Street, Suite 1500
22 Los Angeles, CA 90071
   (213) 955-1150
23 nlevonyan@bcsslaw.com
   ***Attorney for Defendant J.T. Thorpe & Son, Inc.***
24

25

26

27
   PROOF OF SERVICE
28

8

Case No. 4:22-cv-09058-HSG

1
2
3
4
5

Viiu Spangler
Karen Lynn Finateri Silbiger
BERKES CRANE SANTANA & SPANGLER LLP
515 South Figueroa Street, Suite 1500
Los Angeles, California 90071
(213) 955-1150
Email: vspangler@bcsslaw.corn
Email: lsilbiger@bcsslaw.com
*Attorneys for Defendant PLANT PRODUCTS & SUPPLY COMPANY*

6
7
8
9
10

Leonard M. Tavera
SEMPER LAW GROUP, LLP
330 N. Brand Boulevard, Suite 670
Glendale, California 91203
(213) 437-9700
Email: ltavera@semperlawgroup.com
*Attorneys for Defendants PARKER HANNIFIN CORPORATION as Successor-In-Interest to EIS BRAKES and STANDARD MOTOR PRODUCTS, INC.*

11
12
13
14
15
16
17

Marte J. Bassi
Joseph B. Adams
EDLIN GALLAGHER HUIE & BLUM
500 Washington Street, Suite 700
San Francisco, CA 94111
(415) 397-9006
Email: mbassi@eghblaw.com
Email: jadams@eghblaw.com
*Attorneys for Defendant PARKER HANNIFIN CORPORATION as Successor-In-Interest to SACOMO-SIERRA*

18
19
20
21

James P. Cunningham
TUCKER ELLIS, LLP
201 Mission Street, Suite 2310
San Francisco, CA 94105
(415) 617-2400
James.cunningham@tuckerellis.com
*Attorney for Defendant PFIZER, INC. and WARREN PUMPS, LLC*

22
23
24
25
26
27
28

9
PROOF OF SERVICE

Case No. 4:22-cv-09058-HSG

1   John R. Brydon
    Edward P. Tugade
2   Erin McGahey
    DEMLER, ARMSTRONG & ROWLAND, LLP
3   101 Montgomery Street, Suite 1800
    San Francisco, CA 94104
4   Email: bry@darlaw.com
    Email: tug@darlaw.com
5   Email: mcg@darlaw.com
6   ***Attorneys for Defendant PNEUMO ABEX LLC, Individually and as Successor-By-Merger to***
    ***PNEUMO ABEX CORPORATION, Successor-In-Interest to ABEX CORPORATION f/k/a***
7   ***AMERICAN BRAKE SHOE COMPANY, f/k/a AMERICAN BRAKE SHOE AND***
    ***FOUNDRY COMPANY including the AMERICAN BRAKEBLOK DIVISION, Successor-By-***
8   ***Merger to the AMERICAN BRAKE SHOE AND FOUNDRY COMPANY and THE***
    ***AMERICAN BRAKEBLOK CORPORATION, f/k/a THE AMERICAN BRAKE MATERIALS***
9   ***CORPORATION***

10  Christina N. Goodrich
    Damon M. Pitt
11  K&L GATES LLP
    10100 Santa Monica Blvd, 8th Floor
12  Los Angeles, CA 90067
    (949) 623-3604
13  Email: Christina.Goodrich@klgates.com
    Email: Damon.Pitt@klgates.com
14  ***Attorneys for Defendant REDCO CORPORATION, formerly known as CRANE CO.***
15
16  Florence A. McClain
    Gina A. Haran
17  LEWIS BRISBOIS BISGAARD & SMITH, LLP
    45 Fremont Street, Suite 3000
18  San Francisco, California 94105
    415-362-2580
19  Email: Florence.McClain@lewisbrisbois.com
    Email: Gina.Haran@lewisbrisnois.com
20  ***Attorneys for Defendant SB DECKING, INC., formerly known as SELBY, BATTERSBY &***
    ***CO.***
21
22
23
24
25
26
                                              10
27  PROOF OF SERVICE
28                                                      Case No. 4:22-cv-09058-HSG

1
2
3
4
5

Jeffrey H. Grant
Stacey K. Lee
FOX ROTHSCHILD LLP
345 California St., Ste. 2200
San Francisco, CA 94104
(415) 364-5575
Email: jgrant@foxrothschild.com
Email: staceylee@foxrothschild.com
***Attorneys for Defendant SCHNEIDER ELECTRIC USA, INC., f/k/a SQUARE D COMPANY***

6
7
8
9
10
11
12

Arpi Galfayan
Carla Lynn Crochet
Jeremy D. Milbrodt
PRINDLE, GOETZ, BARNES & REINHOLTZ LLP
One World Trade Center, Suite 1100
Long Beach, California 9083
(562) 436-3946
agalfayan@prindlelaw.com
ccrochet@prindlelaw.com
jmilbrodt@prindlelaw.com
***Attorneys for Defendant SYD CARPENTER, MARINE CONTRACTOR, INC.***

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

11

PROOF OF SERVICE

Case No. 4:22-cv-09058-HSG